## No. 14-1794

# United States Court of Appeals for the Fourth Circuit

DAVE & BUSTER'S INC.,

*Plaintiff – Appellant,*

*v.*

WHITE FLINT MALL, LLLP,

*Defendant – Appellee.*

*On Appeal from United States District Court for the District of Maryland (Greenbelt Division), No.8:13-CV-3390 (Hon. Roger Titus, Judge)*

## BRIEF FOR DEFENDANT-APPELLEE

ALBERT D. BRAULT
JAMES M. BRAULT
BRAULT & GRAHAM, LLC
101 South Washington Street
Rockville, MD 20850
(301) 424-1060
adb@braultgraham.com
jmbrault@braultgraham.com

*Counsel for Appellee*

November 10, 2014

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

No. 14-1794 Caption: Dave & Buster's Inc. v. White Flint Mall, LLLP          .

Pursuant to FRAP 26.1 and Local Rule 26.1, White Flint Mall, LLLP, former know as White Flint Limited Partnership who is  Appellee               , makes the following disclosure:

1.     Is party/amicus a publicly held corporation or other publicly held entity?
          ( ) YES                              ( X ) NO

2.     Does party/amicus have any parent corporations?
          ( )     YES                          ( X ) NO
       If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?
          ( ) YES                              ( X ) NO
       If yes, identify all such owners:

4.     Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?
          ( ) YES                              ( X ) NO
       If yes, identify entity and nature of interest:

5.     Is party a trade association (amici curiae do not complete this question)?
          ( ) YES                              ( X ) NO
       If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.     Does this case arise out of a bankruptcy proceeding?
          ( ) YES                              ( X ) NO
       If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ James M. Brault                    Date:  November 10, 2014
          *Counsel for Appellee*

i

# **TABLE OF CONTENTS**

*Page*

DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER
INTERESTS..................................................................................................i

TABLE OF AUTHORITIES ................................................................iv

COUNTERSTATEMENT OF THE ISSUES.........................................1

COUNTERSTATEMENT OF THE CASE.............................................3

COUNTERSTATEMENT OF FACTS ..................................................6

SUMMARY OF ARGUMENT ..............................................................9

STANDARD OF REVIEW ..................................................................12

ARGUMENT ......................................................................................12

   I.   THE DISTRICT COURT CORRECTLY CONCLUDED THAT THE
      STATUTE OF LIMITATIONS DID NOT BAR WHITE FLINT
      FROM EXERCISING ITS RIGHT TO TERMINATE THE LEASE..........12

      A. Under Maryland Law, the Statute of Limitations Did Not Bar
         White Flint From Enforcing Its Rights Based Upon Dave &
         Buster's Breach of the Radius Restriction. ...............................13

      B. The District Court Cases Cited By Dave & Buster's Are
         Distinguishable And Do Not Involve Analogous Circumstances............21

      C. The Non-Maryland Cases Cited By Dave & Buster's Are
         Distinguishable And Otherwise Inconsistent With Maryland Law. ........24

  II.  THE DISTRICT COURT CORRECTLY HELD AS A MATTER OF
      LAW THAT WHITE FLINT DID NOT WAIVE ITS RIGHT TO
      TERMINATE THE LEASE. ..........................................................28

III. THE DISTRICT COURT CORRECTLY RULED AS A MATTER OF LAW THAT THE RADIUS CLAUSE WAS ENFORCEABLE. ..........34

   A. The Court Did Not Err In Considering Dave & Buster's Claim That the Radius Provision Was Unenforceable Without An Affirmative Claim For Breach By White Flint. ........................................34

   B. Dave & Buster's Did Not Offer Any Evidence To Create A Triable Issue Of Fact In Support Its Allegation That The Radius Restriction Was Unenforceable.................................................35

IV. THE DISTRICT COURT DID NOT ERR IN DENYING DAVE & BUSTER'S  REQUEST TO CONDUCT DISCOVERY.............................39

V. THE COURT CORRECTLY RULED THAT DAVE & BUSTER'S DID NOT HAVE A CONTINUING RIGHT TO CURE AFTER TERMINATION OF THE LEASE. ................................................42

VI. THE DISTRICT COURT DID NOT ERR IN STATING THAT DAVE & BUSTER'S ABANDONED ANY DAMAGE CLAIMS. ...........45

CONCLUSION ............................................................................47

STATEMENT REGARDING ORAL ARGUMENT ...........................47

CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a) ....................48

CERTIFICATE OF SERVICE ...........................................................49

iii

# <u>TABLE OF AUTHORITIES</u>

*Page(s)*

## Cases

*Abbott v. Gordon,* No. DKC 09-0372,
2009 WL 2426052 (D. Md. August 6, 2009).......................................24

*Agelli v. Sebelius,* No. CIV.A. DKC 13-497,
2014 WL 347630 (D. Md. Jan. 30, 2014)...........................................41

*Air Transport Association of America v. Lenkin,*
711 F. Supp. 25 (D.D.C. 1989)........................................................27

*Allegis Grp., Inc. v. Jordan,* CIV.A. GLR-12-2535,
2014 WL 2612604 (D. Md. June 10, 2014).........................................38

*Am. Canoe Ass'n v. Murphy Farms, Inc.,*
326 F.3d 505 (4th Cir.2003) ...........................................................12

*Blazer Foods, Inc. v. Restaurant Properties, Inc.,*
673 N.W.2d 805 (Mich. App. 2003).................................................25

*C.B. Trucking, Inc. v. Waste Mgmt. Inc.,*
137 F.3d 41 (1st Cir.1998).............................................................41

*Campbell v. Lake Hallowell Homeowners Ass'n,*
157 Md. App. 504, 852 A.2d 1029 (2004) .........................................44

*Carnegie Realty Co. v. Carolina C. & O. Ry. Co.,*
136 Tenn. 300, 189 SW 371 (1916)..................................................19

*Casson & Co. v. Everngam,*
94 Md. App. 129, 616 A.2d 426 (1992) ............................................42

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986)................................................................. 29, 38

iv

*Comi v. International Longshoremen's Association, Local No. 333,*
No: RDB-06-2927, 2007 WL 4268945 (D. Md. Nov. 30, 2007) ................ 21, 22

*Diamond Point Plaza Ltd. P'ship. v. Wells Fargo Bank, N.A.,*
400 Md. 718, 929 A. 2d 932 (2007) ............................................................ 37, 38

*Evans v. Technologies Applications & Serv. Co.,*
80 F.3d 954 (4th Cir. 1996) ......................................................................... 12, 40

*Food Fair Stores v. Blumberg,*
234 Md. 521, 200 A.2d 166 (1964) ....................................................................29

*Ford v. Int'l Harvester Co.,*
399 F.2d 749 (9th Cir. 1968) .............................................................................27

*H.J. Tucker & Assoc., Inc. v. Allied Chucker & Engineering Co.,*
595 N.W.2d 176 (Mich. App. 1999)....................................................................25

*Harris v. City of Allen Park,*
483 N.W.2d 434 (Mich. App. 1992)....................................................................26

*Hovnanian Land Inv. Grp., LLC v. Annapolis Towne Centre,*
421 Md. 94, 25 A.2d 967 (2011) ............................................................ 28, 29, 31

*In re Day,*
409 B.R. 337 (Bankr. D. Md. 2009) ...................................................................44

*Indian Terr. Illuminating Oil Company v. Rosamond,*
190 Okla. 46, 120 P.2d 349 (1941).......................................................... 18, 26

*Johnson Lumber Co. v. Magruder*
218 Md. 440, 147 A.2d 208 (1958) ....................................................................31

*Kaliopulus v. Lumm,*
155 Md. 30, 141 A. 440 (1928) ................................................... 15-17, 19. 26, 32

*Kumars v.  Dhanda,*
198 Md. App. 337, 17 A.3d 744 (2011) ............................................................13

*Lake St. Louis Comm. Assoc. v. Oak Bluff Preserve,*
956 SW2d 305 (Mo. Ct. App. 1997).................................................................19

*Litz v. Maryland Dept. of Environment,*
434 Md. 623, 76 A.3d 1076 (2013) ..................................................... 13, 14, 20

*MacBride v. Pishvaian,*
402 Md. 572, 937 A.2d 233 (2007) .................................................................20

*McWay v. LaHood,*
269 F.R.D. 35 (D.D.C.2010)...........................................................................41

*Middlebrook Tech, LLC v. Moore,*
157 Md. App. 40, 849 A.2d 63 (2004) ...........................................................44

*Morrow v. Farrell,*
187 F.Supp.2d 548 (D.Md.2002) ....................................................................41

*Myers v. Kayhoe,*
391 Md. 188, 892 A.2d 520 (2006) .................................................................28

*Pinnacle Pizza Company, Inc. v. Little Caesar Enterprises, Inc.,*
598 F.3d 970 (8th Cir. 2010) ..................................................................... 25, 26

*Pisano v. Strach,*
743 F.3d 927 (4th Cir. 2014) ..................................................................... 12, 39

*Pritchard v. Wal-Mart Stores, Inc.,*
3 Fed. Appx. 52 (4th Cir. 2001)......................................................................12

*Pumphrey v. Pelton,*
250 Md. 662, 245 A.2d 301 (1968) ......................................................... 30, 31, 32

*Richard v. Leavitt,*
235 Fed. Appx. 167 (4th Cir.2007)..................................................................41

*Rose and Crown, Ltd v. Shaw Enterprises, Inc.,*
28 Md. app. 548, 346 A.2d 459 (1976)....................................................... 32-33

*Ruddy v. Equitable Life Insurance Society of United States,*
No. DKC 00-70, 2000 WL 964770 (D. Md. June 20, 2000) ..............................23

*The Singer Co., Link Simulation Systems Division Co. v.*
*Baltimore Gas and Electric Co.,*
79 Md. App. 461, 558 A.2d 419 (1989) .......................................... 15, 17, 19, 26

*Villarreal v. Glacken,*
63 Md.App. 114, 492 A.2d 328 (1985) .............................................................16

*Warwick Corp. v. Md. Dep't of Transp.,*
573 F. Supp. 1011 (D.Md.1983) .......................................................................44

*Westminster Investing Corp. v. Lamps Unlimited, Inc.,*
237 Va. 543, 379 S.E.2d 316 (Va. 1989)..........................................................26

*Wylie v. Kirby,*
115 Md. 282, 80 A. 962 (1911) .........................................................................33

## Statutes

29 U.S.C. §160(b) ................................................................................................22

Md. Code, Courts and Judicial Proceedings, §5-101................................................13

Va. Code Ann. §8.01-230 ........................................................................................26

## Rules

Fed. R. Civ. Pro. 56........................................................................ 4, 11, 38, 39, 40

## Other Authorities

Williston on Contracts § 13:10 (4th ed.)..................................................................37

## <u>COUNTERSTATEMENT OF THE ISSUES</u>

Appellee White Flint Mall, LLLP ("White Flint")[1] agrees that this case arises out of a commercial lease between White Flint, as landlord, and Dave & Buster's, Inc. ("Dave & Buster's), as tenant, for retail space in the White Flint Mall. The remainder of Dave & Buster's Statement of Issues is an incomplete and inaccurate characterization of the case.

The lease was made in 1995. In Section 11.3 of the lease, Dave & Buster's covenanted not to "operate" another Dave & Buster's within an agreed-upon geographic area. At some point in 2005, Dave & Buster's began operating another Dave & Buster's at Arundel Mills Mall, which is in the restricted area. White Flint did not consent to, or Dave & Buster's even request, a modification of the lease to permit it to operate the Dave & Buster's at Arundel Mills Mall. On the contrary, White Flint specifically notified Dave & Buster's that White Flint was reserving all of its rights. Further, the lease contained a non-waiver clause. In October 2012, White Flint sought to enforce its rights and remedies under the lease based on Dave & Buster's continuing breach of the radius provision. Dave & Buster's made a business decision not to cure the breach, and filed this preemptive action claiming it was free to continue to "operate" the other Dave & Buster's in breach

---

[1] Appellant's Brief identifies White Flint as a limited liability partnership. D&B Br. at 1. It actually is a limited liability limited partnership. J.A. 312.

the lease for the remainder of the lease term because White Flint did not exercise its right to terminate the lease sooner.

At no time prior to the filing of this lawsuit did Dave & Buster's contend the radius provision agreed to by these two sophisticated businesses was unenforceable. However, in its complaint, Dave & Buster's alleged, without any factual basis, that the provision was unenforceable.

With that overview, White Flint restates the issues on appeal as follows:

1.     Did the district court err in holding that White Flint's termination of the lease based on Dave & Buster's continuing violation of the radius provision was not barred by the statute of limitations?

2.     Did the district court err in holding that White Flint did not waive its right to terminate the lease based on Dave & Buster's continuing violation of the radius provision?

3.     Did the district court err in holding the radius provision was enforceable?

4.     Did the district court abuse its discretion in denying Dave & Buster's motion for reconsideration requesting the opportunity to conduct discovery?

5.     Did the district court err in concluding that Dave & Buster's had no cure right after the court had already declared the lease terminated?

## COUNTERSTATEMENT OF THE CASE

Dave & Buster's commenced this action by filing a three count complaint in the District Court.  In the complaint, Dave & Buster's requested that the Court issue a declaratory judgment as to the parties' rights and obligations under the lease, including a determination that the claimed breach was time-barred or otherwise waived and that Dave & Buster's was not in default (Count I).  J.A. 17 ¶42 – 43, J.A. 20 ¶1.  In addition, the complaint included a claim for specific performance and injunctive relief (Count II), and a claim for breach of implied covenant of good faith (Count III).  J.A. 17-20.  The Prayer for Relief included a request for damages.  J.A. 20 ¶3.

White Flint filed a motion to dismiss or, alternatively, for summary judgment asserting that, as a matter of law, White Flint was not precluded from terminating the lease by the statute of limitations or waiver.  J.A. 141.

Dave & Buster's opposed the motion and countered with a cross-motion for summary judgment based on limitations and waiver.  J.A. 191.  Dave & Buster's included in its opposition/cross-motion an alternative argument that, even if the statute of limitations and waiver did not apply, there was no factual record, including expert testimony, on which the court could determine that the radius provision was enforceable.  J.A. 206-208.  Dave & Buster's opposition/cross-

3

motion did not contain an argument, or attach an affidavit pursuant to Rule 56(d), that it was unable to oppose the motion for summary judgment without discovery.

After hearing oral argument, the Court entered an Order dated March 24, 2014, granting in part and denying in part White Flint's motion. The Court declared that: (1) the radius restriction in Section 11.3 was valid and enforceable, (2) Dave & Buster's had violated the radius restriction by operating its Arundel Mills facility from at least 2006 to the present, (3) White Flint had complied with Section 18.1 of the lease by giving proper notice of the violation and demanding that Dave & Buster's cure the on-going breach, (4) Dave & Buster's failed to cure the breach within the thirty day period set forth in Section 18.1 of the lease, (5) White Flint's notice of termination was effective and the lease thereby terminated on December 31, 2012, and (6) and White Flint's termination of the lease was not barred by the statute of limitations or waiver. In addition, the Court granted the motion to dismiss Count II to the extent it requested a preliminary injunction without prejudice to the right of Dave & Buster's to file a motion for a preliminary injunction, but otherwise denied the motion to dismiss Count II. The Court also dismissed Count III for failing to state a claim. J.A. 290-91.

Following the ruling, Dave & Buster's filed a motion for reconsideration of the Court's prior ruling, to certify the judgment as final, and to stay enforcement. J.A. 293. This motion repeated Dave & Buster's contention that the Court could

not rule on the enforceability of the radius provision absent a more complete factual record, and attached an affidavit of counsel claiming that discovery was needed to explore the economic purpose and necessity of the radius provision. J.A. 308. The motion also argued that reconsideration was appropriate to the extent the court's prior order precluded Dave & Buster's from curing the default by paying actual damages sustained by White Flint up to the date of the cure. J.A. 302. The court denied that motion in its entirety. J.A 356.

White Flint filed its answer with a counterclaim seeking return of possession of the premises to White Flint. J.A. 321. White Flint promptly moved for summary judgment on its counterclaim based on the court's earlier determination that the lease had been lawfully terminated. J.A. 321. Dave & Buster's opposed the motion, arguing that, until it exhausted all appeals, it retained the right to cure the default by paying actual damages incurred by White Flint up to the date of the cure. J.A. 342-346.

Following another hearing, the court issued an order dated July 22, 2014, granting White Flint's motion for summary judgment. The court declared that White Flint was entitled to immediate possession of the premises, but with the parties' consent stayed the order for thirty (30) days. The court also dismissed Count II based on Dave & Buster's assertion that it was not seeking damages for

breach of the express terms of the lease.  This order finally disposed of all claims and the counterclaim.  J.A. 409.

Dave & Buster's moved for a stay pending appeal, which the district court denied.  Dave & Buster's filed a motion for stay in this court, but withdrew the motion after it vacated the premises.

## COUNTERSTATEMENT OF FACTS

In 1995, White Flint and Dave & Buster's, two sophisticated business entities, entered into a percentage rent lease for retail space at White Flint Mall for Dave & Buster's to operate an entertainment-recreation-amusement-restaurant-bar complex similar to other Dave & Buster's across the country.  J.A. 32-34, 50.  The lease provided for a term of twenty years, and also gave Dave & Buster's the option to extend the lease for three additional five year periods subject to certain conditions, including that Dave & Buster's not be in default of an material term of the lease.  J.A. 31-32.

The following provisions of the lease are relevant:

(A) Section 11.3 (Radius Restriction) states that "for so long as Tenant is operating in the leased premises an entertainment-restaurant-amusement complex under the Dave & Buster's Trade Name, Tenant agrees not to operate a restaurant-bar-entertainment-recreation-amusement complex

6

under the Dave & Buster's Trade Name within the radius area shown on the map attached [to the lease] as Exhibit K. . . ." J.A. 52-53.

(B) In Section 18.1 (Landlord Remedies), Dave & Buster's agreed that if it was in default in the observation or performance of its covenants or agreements (other than payment of rent) for a period of thirty (30) days following written notice of the default, White Flint could terminate the lease upon ten days' notice. J.A. 61-62.

(C) Section 20.3 (Waivers) states that, "Failure of either party to complain of any act or omission on the part of the other party, no matter how long the same may continue, shall not be deemed to be a waiver by said party of any of its rights hereunder." J.A. 66.

In 2004, Dave & Buster's acquired a "Jillian's" located in Arundel Mills Mall. In 2005, Dave & Buster's rebranded the former Jillian's as a "Dave & Buster's Grand Sports Café." J.A. 11, at ¶12-13; Dave & Buster's has continued to operate its Arundel Mills entertainment facility under the Dave & Buster's trade name to this day.[2] J.A. 11, at ¶13; J.A. 194; J.A. 228. Although Dave & Buster's tries to make an issue of the fact that Exhibit K is not in the record, there was and is no dispute that Arundel Mills Mall is within the restricted radius area described

---

[2] We use the terms "entertainment facility" or "entertainment complex" as a shortened version of the term "restaurant-bar-entertainment-recreation-amusement complex" in the lease.

in the exhibit.  In all of its papers and in response to questions from the court at two hearings, Dave & Buster's never denied that its Arundel Mills entertainment facility was within the restricted area. Indeed, Dave & Buster's complaint is predicated on that fact.

By letter dated April 13, 2006, White Flint, through its managing agent, notified Dave & Buster's that it was violating the radius restriction by virtue of its operation of the former Jillian's in Arundel Mills Mall.  The letter further notified Dave & Buster's that White Flint was reserving all of its rights relative thereto:

> In deference to the longstanding, mutually beneficial relationship between the parties, Lerner has elected not to formally place Dave& Busters in default under the Lease as a result of the Arundel Mills location. However, the Arundel Mills situation constitutes a significant violation of the Lease.  As such, Lerner wants to clearly advise you that the Landlord <u>reserves all of its rights under the Lease and at law to enforce the terms of the Lease</u>.

(emphasis added). J.A. 130.

Dave & Buster's did not seek to, and White Flint did not agree to, modify the lease to create an exception for the Arundel Mills entertainment facility. Instead, Dave & Buster's continued to operate its Arundel Mills Mall entertainment facility under the Dave & Buster's trade name with knowledge that White Flint had the right, when it so desired, to enforce the terms of the lease.

As it was entitled to do, White Flint chose to enforce those rights in 2012. By letter dated September 5, 2012, White Flint gave formal notice to Dave & Buster's pursuant to Section 18.1 of the lease to cure the default within thirty (30) days. J.A. 132. Again, Dave & Buster's elected not to cure the breach. By letter dated October 9, 2012, White Flint gave notice of termination of the lease effective as of December 31, 2012. J.A. 134.

Following termination of the lease, White Flint refrained from taking immediate action to regain possession as an accommodation to Dave & Buster's while the parties attempted to negotiate a mutually acceptable resolution to the lease violation. However, those discussions failed, and by letter dated October 17, 2013, White Flint formally demanded that D&B vacate the premises and return possession thereof to White Flint by November 30, 2013. J.A. 139.

Dave & Buster's filed this pre-emptive action on November 14, 2013. J.A. 2, D.E. #2.

## SUMMARY OF ARGUMENT

1.     The district court correctly held that Dave & Buster's violation of the radius restriction clause of the lease was not isolated to one event when Dave & Buster's first rebranded the former Jillian's as a Dave & Buster's in 2005. It was an ongoing breach that continuously accrued for so long as Dave & Buster's was "operating" the Arundel Mills Mall entertainment facility under the Dave &

9

Buster's trade name. Maryland law defines this type of covenant as a covenant "*de die in diem*." Each day Dave & Buster's "operated" the Arundel Mills Mall entertainment facility created a fresh cause of action. As a result, White Flint was not barred by limitations from terminating the lease based on Dave & Buster's on-going breach. The statute of limitations would only have prevented White Flint from making a claim to recover damages incurred more than 3 years prior to the filing of an action for breach.

2.    The district court correctly found that there was no waiver. The lease contains a non-waiver provision, and White Flint specifically reserved its rights when it discovered that Dave & Buster's was operating the Arundel Mills Mall entertainment facility. As a matter of law no rational fact-finder could find that White Flint intended to relinquish its rights when it expressly reserved those rights. The acceptance of rent after an express reservation of rights and in accordance with a non-waiver provision does not constitute a waiver as a matter of law.

3.    The district court correctly rejected Dave & Buster's factually unsupported allegation that the radius restriction is unenforceable. The lease is a complicated commercial contract negotiated by sophisticated business entities with both sides agreeing to the scope of the geographic area. The court did not need additional evidence to conclude that the radius provision had a legitimate business purpose. Dave & Buster's counsel acknowledged that radius provisions are

10

common in shopping center leases, and courts, including the Maryland Court of Appeals, have enforced radius restrictions in percentage rent shopping center leases. Dave & Buster's neither alleged facts in its complaint nor produced evidence of facts in opposition to White Flint's motion to create a triable issue of fact and overcome summary judgment. Simply alleging that the lease provision was unenforceable did not create a factual dispute to defeat summary judgment or entitle Dave & Buster's to use discovery as a means of delay and leverage.

4.     The district court did not abuse its discretion in rejecting Dave & Buster's belated contention that it needed discovery related to the radius provision. Under Rule 56(d), Dave & Buster's was required to submit with its initial opposition to the summary judgment motion a detailed affidavit explaining why it needed discovery to be able to oppose summary judgment. Dave & Buster's submitted an affidavit only after it lost and moved for reconsideration. In addition, the affidavit offered little more than legal argument and speculation, and failed to explain why Dave & Buster's could not have presented any facts in opposition to the motion based on its own knowledge of the lease and the geographic area around White Flint Mall and Arundel Mills Mall.

5.     The district court correctly concluded that Dave & Buster's is not entitled to cure its default and undo the termination of the lease by paying monetary damages for a non-monetary breach after a judgment had been entered

11

against it declaring the lease terminated.  It would be nonsensical to interpret the lease to allow Dave & Buster's to cure the default up until it has exhausted all appeals.

## STANDARD OF REVIEW

The district court's grant of summary judgment is reviewed *de novo* for errors of law.  *Evans v. Technologies Applications & Serv. Co.,* 80 F.3d 954, 958 (4th Cir. 1996).

The district court's denial of Dave & Buster's motion for reconsideration and its request for discovery are reviewed under an abuse of discretion standard. *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014); *Am. Canoe Ass'n v. Murphy Farms, Inc.,* 326 F.3d 505, 514–15 (4th Cir.2003); *Pritchard v. Wal-Mart Stores, Inc.,* 3 Fed. Appx. 52 (4th Cir. 2001).

## ARGUMENT

## I.    THE DISTRICT COURT CORRECTLY CONCLUDED THAT THE STATUTE OF LIMITATIONS DID NOT BAR WHITE FLINT FROM EXERCISING ITS RIGHT TO TERMINATE THE LEASE.

Dave & Buster's primary argument below was that the statute of limitations barred White Flint from bringing any action for damages or equitable relief to enforce the lease terms in connection with its claim that Dave & Buster's breached the radius restriction clause in connection with its operation of the Arundel Mills Mall entertainment facility.  Because White Flint was time-barred from bringing a

12

legal action to enforce the lease, the argument goes, White Flint could not terminate the lease based on Dave & Buster's operation of the Arundel Mills Mall entertainment facility and Dave & Buster's was thereby free to continue to breach the lease for the duration of the lease term.

The parties agree that Maryland law applies. The District Court properly applied and interpreted Maryland law in declaring that the statute of limitations did not bar White Flint from enforcing its rights under the lease.

### A. Under Maryland Law, the Statute of Limitations Did Not Bar White Flint From Enforcing Its Rights Based Upon Dave & Buster's Breach of the Radius Restriction.

A statute of limitations is a bar to the filing of a civil action at law. Dave & Buster's relies on Md. Code, Courts and Judicial Proceedings, §5-101, which requires a claim at law to be filed within three years from the date it accrues. In determining when a claim accrues, Maryland has broadly adopted the discovery rule. *Litz v. Maryland Dept. of Environment,* 434 Md. 623, 641, 76 A.3d 1076, 1086 (2013). Therefore, a claim for breach of contract is deemed to accrue either when the contract is breached or when the defendant has knowledge of facts sufficient to put it on notice of the breach and resultant injury. *Kumars v. Dhanda,* 198 Md. App. 337, 343, 17 A.3d 744, 748 n.2 (2011). As this case does not involve factual disputes about when White Flint knew or should have known about

the breaching conduct, the question of accrual is a question of law for judicial determination. *Litz,* 434 Md. at 641, 76 A.3d at 1086.[3]

Dave & Buster's argued below that there was just one breach based on the single event of acquiring and rebranding the former Jillian's in Arundel Mills Mall as a Dave & Busters. J.A. 164. From that premise, Dave & Buster's argued that any claim based on that breach accrued no later than April 2006 when White Flint discovered the breach. On appeal, Dave & Buster's has modified its argument by contending that the breach was based on the same set of facts or circumstances – namely, the acquisition, rebranding and operation of the former Jillian's in Arundel Mills Mall. D&B Brief at 33. However phrased or characterized, Dave & Buster's argument boils down to its position that Maryland law does not recognize a "continuing breach exception" to the statute of limitations and that a claim based on a continuing breach of a continuous covenant accrues at the inception of the breach no matter how long the breach continues. Dave & Buster's position is based on an overly narrow and incorrect construction of Maryland law.

To begin with, there is no question that this case does not involve a single, isolated breach. The contract language is free of any ambiguity. The covenant was not to refrain from "acquiring" or "re-branding" another Dave & Buster's in

---

[3] Dave & Buster's assertion that Maryland typically does not recognize "equitable tolling" is beside the point. This case involves the question of when a claim for a continuing breach is deemed to accrue, and does not involve the creation of a new equitable tolling exception to the statute of limitations.

the restricted area.  Rather, Dave & Buster's agreed not to "operate" another Dave & Buster's in the agreed-upon geographic area covered by Exhibit K.  The covenant imposed a continuous obligation that remained in effect for so long as Dave & Buster's was operating in the White Flint Mall.  Nothing in the covenant suggests that if White Flint did not file suit to enjoin the operation or to exercise its right to terminate the lease within 3 years, the obligation terminated and Dave & Buster's was free to continue to violate the covenant at its whim and without consequence for the remainder of the lease.

The Maryland Court of Appeals has long since recognized that a continuous covenant of this type is a covenant *de die in diem* that can be breached continuously or repeatedly on a daily basis, with the result being that an action for breach accrues continuously for so long as the breach continues.  *Kaliopulus v. Lumm,* 155 Md. 30, 141 A. 440 (1928).  The statute of limitations still applies in that it bars any claim for damages incurred more than three years prior to suit, but it does not bar the covenantee from bringing an action for damages incurred within the three-year period prior to suit.  *The Singer Co., Link Simulation Systems Division Co. v. Baltimore Gas and Electric Co.,* 79 Md. App. 461, 476-77, 558 A.2d 419, 426 (1989).[4]

---

[4] The statute of limitations technically does not apply to equitable claims. Nevertheless, Maryland courts have applied the statute of limitations for an

Dave & Buster's attempts to minimize the significance of *Kaliopulus* because it (i) was decided in 1928 and (ii) involved a specialty contract subject to a twelve year limitations period and the claim was brought within twelve years of the onset of the breaching conduct.  Though decided many years ago, *Kaliopulus* has not been overruled and is binding precedent.  And, the Maryland Court of Appeals' discussion of the continuous creation of fresh causes of action was not dependent on the action having been filed within twelve years of the first breach.  Dave & Buster's simply wants to ignore that part of the opinion.

The plaintiff in *Kaliopulus* brought suit for equitable relief based on a covenant by the seller in connection with the sale of a restaurant not to enter into, conduct or finance a competing restaurant within a certain area for a period of ten years.  The plaintiffs alleged that out of the ten years of the covenant, the seller had continuously violated the covenant for period of five years and one month preceding the suit.  The seller contended that the unexplained delay made the bill of complaint bad on demurrer.

The Maryland Court of Appeals affirmed the denial of the demurrer on that ground.  The Court initially observed that because the breach was an intentional and knowing violation of the contract, the plaintiffs, as covenantees, were under no duty to protest the violation or to bring suit in equity to enforce the contract right

---

analogous claim at law in considering whether an equitable claim is barred by laches. *Villarreal v. Glacken,* 63 Md.App. 114, 127-28, 492 A.2d 328 (1985).

away.   The Court went on to address the statute of limitations.   Although the

twelve year limitations period for a specialty contract was applicable to the

contract in that case, the Court nonetheless explained:

> In this connection it is important to bear in mind that the
> facts admitted by the demurrer show a breach of
> covenant de die in diem, and on the happening of any
> breach the covenantees had a right of action, no matter
> the number of preceding breaches, as each successive
> breach in the course of the continuing or recurring
> breaches was constantly creating fresh causes of action.
> The covenantees owed no duty to the covenantor to sue
> at law or to enjoin him in equity but the covenantor's
> obligation was continuous throughout the entire period of
> 10 years from June 1, 1921.

141 A. at 445.  The same applies here.  Like the covenant in *Kaliopulus*, Dave &

Buster's covenant not to "operate" another Dave & Buster's in the restricted area

was a covenant *de die in diem*, the continuous or recurring breach of which was

constantly creating "fresh causes of action."

Dave & Buster's attempts to distinguish *Singer* by interpreting the opinion

to apply only to separate and independent breaches of a continuous obligation as

opposed to an on-going breach of that obligation on a daily basis.  This overly

constrained reading of *Singer* is not supported by either the language of the opinion

or the reasoning of the Maryland Court of Special Appeals.  The *Singer* Court cited

numerous cases from other jurisdictions addressing the issue in a variety of

contexts and concluded that "where a contract provides for continuing performance

over a period of time, each successive breach of that obligation begins the running of the statute of limitations anew, <u>with the result being that accrual occurs continuously and a plaintiff may assert claims for damages occurring within the statutory period of limitations.</u>"  (emphasis added) 79 Md. App. at 475.

Notably, one of the cases the *Singer* court cited as being sound is *Indian Terr. Illuminating Oil Company v. Rosamond*, 190 Okla. 46, 120 P.2d 349 (1941), which involved a lessee's right to sue for breach of an implied covenant in an oil and gas lease to protect the lessor from drainage.  The Oklahoma court held that the implied covenant was a continuing covenant and that an action for breach could be maintained beyond the limitations period although damages would be limited to the five years preceding filing of suit.  The Court reasoned that "the right to maintain an action for [a continuing] breach continues so long as the breach continues, and plaintiff is damaged thereby."  120 P.2d at 352.  The court then stated the rule as follows:

> The rule is that a breach of a continuing covenant gives rise to a cause of action each day the breach continues, and any claim for breach back of the statutory period within which the action may be brought is barred.

*Id.* at 354.   The *Singer* court's reliance on this case is further support for Maryland's recognition that accrual occurs continuously, not the other way around.[5]

To be sure, *Singer* involved separate incidents of power outages and not a continuous power outage for more than three years.  That *Singer* involved multiple breaches, however, does not mean that a continuous breach on a daily basis is to be treated any differently.  Whether the breach occurs every day or every other day, it can result in new and additional damages that would not be incurred if the breaching conduct had ceased altogether.

In sum, *Kaliopulus* and *Singer* establish that (i) a covenant to refrain from committing acts is a covenant *de die in diem*, (ii) the continuous or recurring breaches of a covenant *de die in diem* constantly creates fresh causes of action, with the result being that accrual occurs continuously, (iii) the covenantee is under no obligation to sue at law or to enjoin the covenantor in equity prior to the

---

[5] For other cases recognizing a continuous accrual, see *Lake St. Louis Comm. Assoc. v. Oak Bluff Preserve*, 956 SW2d 305, 309 (Mo. Ct. App. 1997) (holding that a cause of action for damages caused by breach of a continuous promise accrued continuously and damages incurred within the applicable statute of limitations could be recourse); *Carnegie Realty Co. v. Carolina C. & O. Ry. Co.*, 136 Tenn. 300, 189 SW 371, 373 (1916) (holding that grantee's violation of a contract to maintain and operate a passenger station on the lots conveyed to the railway company was a continuous obligation and "the right to sue for its breach runs along with the breach, and will include damages sustained within [the limitations period].").

expiration of the covenant, and (iv) however, the covenantee may only recover damages it incurred within the statutory period of limitations.

Dave & Buster's position is not only inconsistent with Maryland's approach to continuous breaches of contractual duties, it also is inconsistent with Maryland's approach to continuous violation of tort duties. S*ee, Litz v. Maryland Dept. of Environment,* 434 Md. 623, 76 A.3d 1076 (2013); *MacBride v. Pishvaian*, 402 Md. 572, 937 A.2d 233 (2007). *Litz* included a negligence and trespass claims against a town for continuously allowing the discharge of contaminated water onto the plaintiff's property. The Maryland Court of Special Appeals had held that the claims were barred because they were based on "ongoing adverse consequences" of the initial tortious conduct. The Court of Appeals reversed, distinguishing ongoing adverse consequences resulting from an earlier act and ongoing consequences resulting from ongoing conduct. By contrast, *MacBride* involved ongoing consequences of wrongful acts (misrepresentations made at the time a contract was entered) that had occurred more than three years before the suit was filed.

By parity of reasoning, this is not a situation where damages were caused on the first day Dave & Buster's operated its Arundel Mills Mall entertainment facility and any additional damages were merely adverse effects of the initial breaching conduct. Rather, each day that Dave & Buster's operated the Arundel

Mills Mall facility resulted in the potential for new damages that would not have been incurred if Dave & Buster's ceased to breach the contract.

The implications of Dave & Buster's argument illustrate just how illogical it is. It is not hard to imagine a scenario where for any number of reasons the damages are minimal in the first few years, but thereafter the business flourishes. Dave & Buster's could even wait three years before increasing promotions to draw in customers from areas closer to White Flint Mall or expanding the Arundel Mills Mall facility or adding new games to make it more attractive than the one in White Flint Mall. The result could be minimal damage in the first three years and substantial damages thereafter. Yet, under Dave and Buster's theory, White Flint would have no right to terminate the lease and no recourse to recover damages for the remainder of the lease term. It would have to just suffer the losses.

Accordingly, as Judge Titus correctly determined, the only effect of the statute of limitations was to bar White Flint from recovering any damages that it incurred more than three years prior to bringing an action at law.

### B.    The District Court Cases Cited By Dave & Buster's Are Distinguishable And Do Not Involve Analogous Circumstances.

Apart from being factually inapposite, *Comi v. International Longshoremen's Association, Local No. 333*, No: RDB-06-2927, 2007 WL 4268945 (D. Md. Nov. 30, 2007) did not involve application of Maryland's statute of limitations, much less Maryland law in connection with a continuous breach of

contract. That case involved a labor dispute in which the plaintiff/employee, a union worker, was initially suspended from employment for six months for refusing to take a drug test following an accident at work. The plaintiff/employee filed a grievance, after which he was notified that his suspension was permanent. More than a year after he received unequivocal notification that his grievance was denied and that he remained terminated, plaintiff filed a "hybrid claim" against both his employer for alleged violation of a collective bargaining agreement and his union for alleged breach of its duty of fair representation. The claims against the union were based on its (i) failing to assist plaintiff in challenging his termination and (ii) implementing the drug policy alleged breach. Under Federal law, there is a six month limitations period for these types of claims.[6] Applying Federal law, the *Comi* court held that these claims accrued when, following his grievances, the plaintiff/employee received final notice that his employment remained terminated.

Apparently, Dave & Buster's is relying on the *Comi* court's rejection of one of the plaintiff's arguments: to *wit*, that limitations did not run on his claim against the union for violating its duty of fair representation in the implementation of the drug policy because the policy continued to remain in effect even at the time suit was filed. As the *Comi* court recognized, a terminated employee would never be

---

[6] *See* 29 U.S.C. §160(b) ("no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge.").

barred from filing suit under that theory, and would be able to bring suit as long as the policy remained in place no matter if it was ten years year or fifty years after his employment ended. The facts here are not analogous. The lease did not come to an end in 2006, and White Flint did not bring suit more than three years after Dave & Buster's ceased to be a tenant.

*Ruddy v. Equitable Life Insurance Society of United States*, No. DKC 00-70, 2000 WL 964770 (D. Md. June 20, 2000) also is not analogous. The plaintiff in that case converted a term life insurance policy to a whole life policy with a guaranteed payout based on alleged oral statements by the insurance company's agent that after ten years of monthly premium payments at a fixed amount the policy would be paid up and the premiums would vanish. These statements were inconsistent with, and contradicted by, the written policy that was issued to the plaintiff. Within one year after issuance of the policy, the plaintiff was informed that he would need to increase the premium amount to keep the policy from lapsing. Two years later, after receiving another notice, plaintiff made a written complaint to the company. Ultimately, five years after the policy was issued, it lapsed. The plaintiff filed suit more than seven years after the policy was issued. The complaint asserted contract and tort claims. With respect to the contract claim, the court held that the alleged breach of the oral promise was a "single breach" that occurred when the written policy contradicting the oral promises was

23

issued or, at the latest, when the company notified plaintiff that additional premiums were necessary to keep the policy from lapsing. The facts of the *Ruddy* case are fundamentally different from those in the present dispute, where the breach was continuous and not a single, isolated act or event.

*Abbott v. Gordon*, No. DKC 09-0372, 2009 WL 2426052 (D. Md. August 6, 2009) involved tort claims of tortious interference with contract, tortious interference with prospective advantage, and defamation arising out of a contract related to the sale of property. The plaintiffs had placed a contract on the property, but the property was sold to defendants who had entered into a contract prior to the defendants' contract. The court merely recognized that the claim for tortious interference arose when the contract was breached, which was when the sale to the defendants was consummated. The case did not involve a claim based on an ongoing breach.

## C. The Non-Maryland Cases Cited By Dave & Buster's Are Distinguishable And Otherwise Inconsistent With Maryland Law.

Dave & Busters also cites non-Maryland cases. At best, these cases show only that, unlike Maryland and several other states, some jurisdictions treat a continuous breach as having accrued at the inception of the breach and not to accrue continuously. The simple answer is that this case is governed by Maryland law where the accrual of a cause of action is treated differently. The Court need look no further than the Maryland cases.

24

In *Pinnacle Pizza Company, Inc. v. Little Caesar Enterprises, Inc.*, 598 F.3d 970 (8th Cir. 2010), a franchisee sued its franchisor for breach of contract alleging that the franchisor breached the agreement by using an advertising phrase "Hot-N-Ready" allegedly created by the franchisee without the franchisee's consent for more than six years. The applicable limitations period for a breach of contract claim in that case was six years. Applying Michigan law to the issue of the timing of the breach, the Eighth Circuit observed that no Michigan case had extended the continuing wrong doctrine in tort cases to a continuous breach of a contract. The Eighth Circuit also observed that Michigan courts only allowed claims for repeated breaches when the contract was an installment payment contract or analogous contract that created duties "occurring and resetting" monthly or periodically. 598 F.3d at 976-77.[7] The Eighth Circuit, therefore, held under the Michigan law that the use of the same advertising phrase over the years was but one continuing breach that related to the single use of the phrase that accrued from the first use of the phrase. 598 F.3d at 978.

---

[7] In reaching its conclusion about Michigan law, the Eighth Circuit compared two Michigan intermediate appellate court decisions: *H.J. Tucker & Assoc., Inc. v. Allied Chucker & Engineering Co.*, 595 N.W.2d 176 (Mich. App. 1999) (which involved multiple, independent breaches from the nonpayment of commissions when due) and *Blazer Foods, Inc. v. Restaurant Properties, Inc.*, 673 N.W.2d 805 (Mich. App. 2003) (treating a franchisor's continued neglect to fulfill its duties under the contract was a single breach. Neither case represents the view of the highest court in Michigan.

Michigan's view of the accrual of an action for breach of contract is more restrictive than Maryland's. Unlike Maryland, for example, Michigan does not apply the discovery rule to contract cases and a breach of contract claim arises from the date of breach regardless of when discovered. *Pinnacle Pizza Company, Inc.*, 598 F.3d at 975, citing *Harris v. City of Allen Park,* 483 N.W.2d 434, 436 (Mich. App. 1992). The Eighth Circuit's interpretation of Michigan law stands in stark contrast to the Maryland Court of Appeals' statement in *Kaliopulus* that a continuous or recurring breach of a covenant *de die in diem* constantly creates fresh causes of action. It also is in direct conflict with *Indian Terr. Illuminating Oil Company v. Rosamond*, *supra*, a case cited favorably by the Maryland Court of Special Appeals in *Singer.*

Dave & Buster's also relies heavily on *Westminster Investing Corp. v. Lamps Unlimited, Inc.,* 237 Va. 543, 549, 379 S.E.2d 316, 319 (Va. 1989). Like Michigan, Virginia has taken a wholly different approach to the questions of limitations and continuous breach than Maryland has. Virginia's statute of limitations is five years in contract as opposed to Maryland's three years and the action accrues on the date of the breach and not when the damage is discovered. Va. Code Ann. §8.01-230. Thus, unlike Maryland, the discovery rule is inapplicable to contract claims. In addition, the Virginia court in *Westminster* rejected the continuing breach rule as espoused in *Indian Terr. Illuminating Oil*

*Company v. Rosamond*, *supra*, whereas the Maryland Court of Special Appeals adopted that rule in *Singer*.

*Ford v. Int'l Harvester Co.*, 399 F.2d 749 (9th Cir. 1968) is of the same ilk. That case involved the application of Washington law to a farm equipment dealer's claim against a manufacturer for breach of an oral contract by allowing the operation of a competing dealership. The court noted that the dealer knew more than three years before suit was filed that the manufacturer did not intend to terminate the competing dealership and to honor its alleged promise. Here, since White Flint did not seek to enforce the contract (but instead reserved its right to enforce the contract later), it cannot be said that White Flint knew Dave & Buster's would not terminate its operation of the Arundel Mills Mall facility if and when White Flint decided to enforce its rights.

Finally, *Air Transport Association of America v. Lenkin*, 711 F. Supp. 25 (D.D.C. 1989) is inapposite. The issue in that case was the interpretation of a rent escalation clause, and the court held that claims based on a dispute over the interpretation of that clause arose when the plaintiff knew -- twelve years earlier -- of the defendant's interpretation. Here, there was no dispute over the meaning of the radius restriction in 2006. Rather, Dave & Buster's never denied the violation and White Flint simply reserved it right to enforce the terms later.

In sum, while different states may view limitations differently, to the extent any of these cases support the view that limitations accrues from the initial breach regardless of the fact that the breaching conduct continues, these cases are inconsistent with Maryland law.

## II. THE DISTRICT COURT CORRECTLY HELD AS A MATTER OF LAW THAT WHITE FLINT DID NOT WAIVE ITS RIGHT TO TERMINATE THE LEASE.

Dave & Buster's argues that the district court erred in granting summary judgment on its waiver argument because waiver is a factual issue generally inappropriate for summary judgment.  As with other factual issues, summary judgment is inappropriate only when there are factual disputes that are material to the issue of waiver.  When there is no genuine dispute of material fact and no reasonable fact-finder could find there has been a waiver, summary judgment is appropriate and should be granted.  *Hovnanian Land Inv. Grp., LLC v. Annapolis Towne Centre,* 421 Md. 94, 124-25, 25 A.2d 967, 985 (2011) (recognizing that while waiver commonly involves a highly fact intensive inquiry, it nonetheless can be resolved on summary judgment when the material facts are undisputed and the moving party is entitled to judgment in its favor); *Myers v. Kayhoe*, 391 Md. 188, 207, 892 A.2d 520, 531 (2006) (affirming summary judgment because no rational trier of fact could conclude that there was a waiver).

Waiver is the intentional relinquishment of a known right, and can be evidenced by express words or by conduct warranting an inference that of an intention to relinquish one's rights. *Food Fair Stores v. Blumberg*, 234 Md. 521, 531, 200 A.2d 166 (1964). In either case, waiver is not inadvertent or accidental; it requires a specific intent to give up rights the party would otherwise have. Further, when, as here, a contract includes a non-waiver clause, the party asserting waiver must produce evidence of an intent to waive the terms of the non-waiver clause as well. *Hovnanian Land Inv. Grp., LLC,* 421 Md. at 123, 25 A.3d at 984.

Dave & Buster's does not contend there was an express waiver. Dave & Buster's contends that White Flint impliedly waived its right to declare the operation of the Arundel Mills facility a default – i.e., that White Flint effectively relinquished any right to enforce the radius restriction as to that facility – by continuing to accept rent and not taking action to enforce its rights for six and one-half years. To overcome summary judgment on its implied waiver claim, Dave & Buster's had to come forward with evidence of conduct warranting an inference that by not taking action sooner it was White Flint's intention to forever relinquish its rights at law and under the lease (including the non-waiver clause) with respect to Dave & Buster's operation of its Arundel Mills Mall entertainment facility. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

29

The undisputed evidence in the record shows just the opposite.  Rather than waiving its rights, White Flint expressly reserved its rights and so notified Dave & Buster's. A reservation of rights is the opposite of a relinquishment of rights.  A rational fact-finder could not find that White Flint intended to relinquish its right to enforce the lease terms when the evidence unequivocally establishes that White Flint intended to preserve those rights in the event it chose to exercise them at a later date and made that intention known to Dave & Buster's.

Dave & Buster's suggests that a waiver automatically occurs when a landlord continues to accept rent and to perform under the lease after learning of the tenant's breach.  D&B Brief at 30.  The cases cited by Dave & Buster's, however, do not support this proposition.  None involved a situation where the acceptance of rent or subsequent performance of the contract followed an express reservation of rights.  *Cf., Pumphrey v. Pelton*, 250 Md. 662, 245 A.2d 301 (1968) (noting the axiom that "He who is silent when he ought to have spoken, will not be heard to speak when he ought to be silent.").  White Flint did speak: it gave notice that it was reserving its rights with respect to Dave & Buster's violation of the radius restriction.  There is no evidence that Dave & Buster's took exception to White Flint's reservation of its rights or requested a modification of the lease.  Rather, it proceeded with full knowledge that at any point in the future White Flint might seek to enforce the radius restriction.

30

*Pumphrey v. Pelton* is noteworthy because in that case the franchisor allowed the franchisee to sell non-Dairy Queen ice cream for more than ten years from the in breach of the contract terms.[8]   There was other evidence that the franchisor also knowingly permitted other franchisees to sell non-Dairy Queen ice cream.   The Maryland Court of Appeals noted the relationship between implied waiver in this context and estoppel by silence:

> "The whole doctrine of equitable estoppel is a creature of equity and governed by equitable principles.   It was educed to prevent the unconscientious and inequitable assertion of rights or enforcement of claims which might have existed or been enforceable, had not the contact of a party, including his spoken and written words, his positive acts and his silence or negative omission to do anything rendered it inequitable and unconscionable to allow the rights or claims to be asserted or enforced."

250 Md. at 669-70, 245A.2d at 305, quoting *Johnson Lumber Co. v. Magruder*, 218 Md. 440, 447-48, 147 A.2d 208 (1958).   These equitable considerations are not present here.   Unlike the franchisor in *Pumphrey*, White Flint did not lead Dave & Buster's to believe White Flint was forever waiving its rights such that it would be inequitable or unconscionable to allow those rights to be enforced.

Dave & Buster's waiver argument also presupposes that White Flint, as the the covenantee, was under a duty to enforce its rights immediately or be deemed to

---

[8] Notably, there was no issue of limitations in *Pumphrey*, and in *Hovnanian* the Court of Appeals characterized the franchisee's breach as an "on-going breach." 421 Md. at 117, 25 A.3d at 980.

have waived them. That is not in accord with Maryland law. In *Kaliopulus*, the Maryland Court of Appeals held that in the case of an intentional breach the covenantee is under no obligation to take action right away:

> It does not appear from the complaint that there could have been any reason for the covenantees to believe that the continuous invasions of their rights by the covenantor was because he mistakenly conceived himself to be acting lawfully, and hence the covenantees were under no duty to protest to the covenantor against his actions; and, subject to any statute of limitations, the covenantees could assert their rights against the conscious wrongdoer by legal proceedings at any time most convenient to themselves.

141 A. at 445. These equitable principles are consistent with the above discussion in *Pumphrey* regarding implied waiver. There is no doubt that Dave & Buster's violation of the radius provision was not based on an innocent mistake. White Flint had no duty to take action right away. Therefore, even if White Flint had not expressly reserved its rights and even if the lease did not have a non-waiver provisions, White Flint could not have waived its right to enforce the lease by not taking action right away.

Among other things the trial judge asked counsel if there was anything that caused Dave & Buster's to act to its prejudice by reason of its failure to file suit earlier. None could be asserted. But it is also worthy of note when the court cited its experience in the case of *Rose and Crown, Ltd v. Shaw Enterprises, Inc*., 28

Md. App. 548, 558, 346 A.2d 459, 465 (1976) where the court quoted from *Wylie*

*v. Kirby*, 115 Md. 282, 287, 80 A. 962, 964 (1911) stating:

> "The courts of equity are only closed against the tenant
> where the forfeiture is incurred by his wilful and culpable
> neglect to fulfill the terms of his covenant and not in
> cases where the omission has been occasioned by
> inevitable accident.  - - - *'but where the transaction is*
> *wilful, or the compensation impracticable, they*
> *invariably refuse to interfere'*."

(Emphasis added).

Dave & Buster's also argues in a footnote that that the no-waiver clause is

inapplicable because it only applies if White Flint failed to complain, and White

Flint did complain in its April 13, 2006 letter.  D& B Brief at 31, n.7.  To the

extent this Court considers that point, it lacks merit (to say nothing of stretching

the bounds of logic).  Pursuant to the plain language of Section 20.3, a failure to

complain at any time does not constitute a waiver, regardless of whether White

Flint had previously complained of the breach.  Therefore, to the extent Dave &

Buster's suggests that White Flint continued to accept rent without complaint after

its April 13, 2006 reservation of rights letter, the no-waiver clause would clearly

apply.  Moreover, the April 13, 2006 letter was not a "complaint" in the context of

Section 20.3, but rather was a reservation of White Flint's rights under the lease.

In sum, with or without the no-waiver clause, the district court correctly held

based on the undisputed facts that White Flint did not waive its right to enforce the

33

radius provision in connection with Dave & Buster's operation of its Arundel Mills

Mall entertainment facility.

## III.  THE DISTRICT COURT CORRECTLY RULED AS A MATTER OF LAW THAT THE RADIUS CLAUSE WAS ENFORCEABLE.

The district court rightly concluded that the language of the lease is clear and

unambiguous; the lease was negotiated between two obviously sophisticated

parties; and radius clauses are common in commercial leases of this type and

routinely enforced in accordance with their terms.

Dave & Buster's nevertheless argues the district court's decision regarding

the radius restriction was premature based on three grounds: (1) there was no claim

or defense before the court alleging Dave & Buster's was in violation of the radius

restriction, or any other clause of the lease, upon which summary judgment could

appropriately be granted; (2) the enforceability of the radius restriction is a

question of fact that could not be decided without additional facts; and (3)

discovery was prohibited by the court's ruling and Dave & Buster's needed

discovery to offer facts to support its allegation that the radius provision was

unenforceable.

### A. The Court Did Not Err In Considering Dave & Buster's Claim That the Radius Provision Was Unenforceable Without An Affirmative Claim For Breach By White Flint.

Initially, Dave & Buster's suggests that the reasonableness of the radius

provision was not properly before the court when it issued its March 24, 2014

Order because White Flint had not affirmatively pled a claim for breach.  D&B

Brief at 8, 26.  As set forth above, however, Dave & Buster's complaint alleged

that the radius provision was unenforceable and requested a judicial determination

as to the parties' rights and obligations under the lease.  In addition, Dave &

Buster's sought injunctive relief specifically enforcing the lease, as well as "such

other and further relief as the Court may deem just and proper."  J.A. 20.  The

court necessarily could not enforce the lease as requested by Dave & Buster's

without first deciding whether the lease was effectively terminated, which in turn

required consideration of Dave & Buster's contention that there was no default

because the radius provision was unenforceable.  Therefore, the court did not err in

ruling on Dave & Buster's argument that the radius provision was unenforceable.

### B. Dave & Buster's Did Not Offer Any Evidence To Create A Triable Issue Of Fact In Support Its Allegation That The Radius Restriction Was Unenforceable.

Dave & Buster's affirmatively raised the issue of the enforceability of the

radius provision.  As the party claiming the unreasonableness of a contractual

provision, it was incumbent on Dave & Buster's to allege facts and provide

admissible evidence to support its position. Yet, despite Dave & Buster's

sophistication and involvement in the negotiation of the radius clause, Dave &

Buster's made no attempt to plead or come forward with any factual support or

explanation for its claim.  The only affidavit offered in support of Dave & Buster's

assertion in this regard was an affidavit from its counsel claiming that "this is an issue which cannot be decided without discovery." However, as set forth below, discovery would only have resulted in needless expense and delay, and would not have affected the outcome.

Dave & Buster's argues that the court could not make a determination of the enforceability of the radius provision without additional evidence from White Flint as to the economic purpose of the clause. However, that argument would mean that any covenantee could avoid summary judgment and require parties to engage in prolonged and expensive discovery merely by alleging the covenant was unenforceable without coming forward with even a scintilla of factual support.

The court did not need affidavits or deposition testimony to determine that there was a significant economic purpose for the provision. As the court recognized in its comments during oral argument, the business purpose is self-evident. The lease is for space in a shopping mall and provides for percentage rent. J.A. 230, 235-236. It was negotiated by experienced and highly sophisticated business entities with substantial investments at stake. Dave & Buster's is a unique entertainment facility, not a typical restaurant. It does not take expert testimony to see that operating other Dave & Buster's in the same geographic area would take away customers from White Flint Mall. Dave & Buster's counsel even

agreed that radius restrictions are typical in shopping center leases "all over the place." J.A. 235.

Maryland's courts, and courts elsewhere, have enforced radius restriction provisions in commercial leases where a significant economic purpose is evident. *See*, *Diamond Point Plaza Ltd. P'ship.* v. *Wells Fargo Bank, N.A.,* 400 Md. 718, 753, 929 A. 2d 932, 952 (2007). In reaching the conclusion of enforceability of radius restriction in *Diamond Point,* the Maryland Court of Appeals reasoned:

> Read in context, it would seem clear that the purpose of the radius restriction was to protect the percentage rent <u>by precluding competing operations</u> within the same market area that might siphon sales from the Diamond Point Plaza store.

400 Md. at 753, 929 A. 2d at 953, fn. 7. *See also*, *Williston on Contracts* § 13:10 (4th ed.) (recognizing that in light of the tremendous sums of money necessary to construct shopping centers radius clauses, in conjunction with a percentage lease, "serve the legitimate business function of protecting the lessor and other tenants from having their flow of business drained by a competing store owned by a shopping center lessee and situated so closely that is it would likely draw away customers.").

The language here is similar to that in *Diamond Point*. It is clear, unambiguous and not susceptible to any other meaning. It says what the court indicated in *Diamond Plaza* would be enforceable as a matter of law. If Dave &

Buster's operates another Dave & Buster's restaurant within the agreed-upon area, that operation constitutes a clear violation of the lease. Dave & Buster's contention that this particular provision of the fully negotiated commercial lease is unenforceable is nothing more than a self-serving attempt to excuse its desire to ignore its contractual obligations.

Here, as in *Diamond Point*, White Flint has a significant economic purpose, as recognized by the Court of Appeals: to protect Dave & Buster's percentage rent by precluding competing operations within the same market area that might siphon sales from the White Flint location.

Under Rule 56 of the Federal Rules of Civil Procedure, "the court *shall* grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a) (2014) (emphasis added). Where "a nonmoving party has failed to make sufficient showing of an essential element of [its] case where [it] has the burden of proof, 'there can be no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Allegis Grp., Inc. v. Jordan*, CIV.A. GLR-12-2535, 2014 WL 2612604 at *4 (D. Md. June 10, 2014) (citing *Celotex Corp.*, 477 U.S. at 322-23)). Dave & Buster's did not come forward with

any evidence to support its allegation that the radius provision was unenforceable to create a dispute of material fact.

In sum, the established, uncontested facts on the record (the lease and the two stores admittedly in simultaneous operation) establish White Flint's significant economic interest protected by the radius restriction. It was Dave & Buster's burden to demonstrate the restriction was overly broad, unduly burdensome, or against the public interest. Dave & Buster's complete failure of proof concerning these essential elements necessarily rendered all other facts immaterial and made summary judgment appropriate.

## IV. THE DISTRICT COURT DID NOT ERR IN DENYING DAVE & BUSTER'S REQUEST TO CONDUCT DISCOVERY.

As stated above, the decision to defer ruling on a summary judgment motion in order to allow the nonmoving party to obtain discovery is reviewed under an abuse of discretion standard. *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014). The district court did not abuse its discretion.

First, Dave & Buster's did not submit a Rule 56(d) affidavit in response to White Flint's summary judgment motion. This Court has stated that if a party believes discovery is needed to oppose a motion for summary judgment, the proper course is to file an affidavit stating "that it could not properly oppose a motion for summary judgment without a chance to conduct discovery." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002). The party opposing

39

summary judgment "cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery." *Evans v. Technologies Applications & Service Co.,* 80 F.3d 954, 961 (4th Cir.1996). Rather than asserting that it could not oppose the motion without discovery, Dave & Buster's took the legal position that it did not have to produce any facts and that merely raising the issue was sufficient to place the burden on White Flint to prove, through expert testimony, the business justification for the provision. It was only after the Court granted partial summary judgment in White Flint's favor that Dave & Buster's filed a Rule 56(d) affidavit of counsel with its motion for reconsideration.

Further, the affidavit of counsel submitted with the motion for reconsideration essentially reiterated the same legal argument raised in the opposition, failed to explain why Dave & Buster's could not produce any factual support for its argument in the absence of discovery, failed to specify what facts probably existed that were not otherwise available to it, and failed to set forth a plausible basis for the court to conclude that discovery would likely have affected the outcome of the motion. Rule 56(d) provides that a court may defer ruling on the motion or allow discovery if the nonmovant shows through affidavit specific reasons why it cannot present facts essential to justify its opposition. Mere speculation and vague assertions that helpful facts may be uncovered in discovery

is insufficient. Rule 56(d) does not authorize "fishing expedition[s]." *Morrow v. Farrell,* 187 F.Supp.2d 548, 551 (D.Md.2002), *aff'd,* 50 Fed. Appx. 179 (4th Cir.2002). The nonmovant must provide "a reasonable basis to suggest that [the requested] discovery would reveal triable issues of fact" in order for such a request to be granted. *McWay v. LaHood,* 269 F.R.D. 35, 38 (D.D.C.2010); *Richard v. Leavitt,* 235 Fed. Appx. 167, 167 (4th Cir.2007). Otherwise stated, the nonmovant must "set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *C.B. Trucking, Inc. v. Waste Mgmt. Inc.,* 137 F.3d 41, 44 (1st Cir.1998). *See also*, *Agelli v. Sebelius*, No. CIV.A. DKC 13-497, 2014 WL 347630, at *9 (D. Md. Jan. 30, 2014).

Here, Dave & Buster's pled that the provision was unenforceable. Dave & Buster's has possession of its sales records and information about the demographics of its customers. If Dave & Buster's had a good faith basis for its allegation that the radius provision was unenforceable, then it could have submitted evidence in opposition to White Flint's summary judgment motion. The lack of any submission suggests that Dave & Buster's argument was tactical -- perhaps to try to prolong the litigation or to generate an argument on appeal.

**V.    THE COURT CORRECTLY RULED THAT DAVE & BUSTER'S DID NOT HAVE A CONTINUING RIGHT TO CURE AFTER TERMINATION OF THE LEASE.**

Dave & Buster's cites a portion of the last paragraph of Section 18.1 of the lease and claims that the cited language provides Dave & Buster's with the right to cure its default (and thereby presumably somehow "undo" the termination of the lease) by paying damages for a non-monetary breach.

The specific portion of Section 18.1 upon which Dave & Buster's relies must be read in its full context.[9]  Section 18.1 provides White Flint with a variety of remedies in response to various types of default by Dave & Buster's; both monetary and non-monetary.  Pursuant to Section 18.1, the right and ability to cure an event of default lies with Dave & Buster's after it has been notified by White Flint of the nature of such default.  A monetary default can be cured by the payment of the amount due within ten days; a non-monetary default can be cured by the performance of the covenant or agreement required to be performed within thirty days.  J.A. 61.  White Flint formally notified Dave & Buster's on two occasions that Dave & Buster's was in non-monetary default of the lease as a result of Dave & Buster's violation of the terms of Section 11.3 (the radius provision).  J.A. 130 and 132.  Dave & Buster's elected not to cure the noticed default within

---

[9]  Maryland courts endeavor to interpret the contract in a manner that would make the most sense in the context of the parties at the time the contract was made. *Faw, Casson & Co. v. Everngam,* 94 Md. App. 129, 135, 616 A.2d 426, 429 (1992), *cert den'd,* 330 Md. 155, 622 A.2d 1195 (1993).

the thirty day time period.  One of the bargained-for remedies available to White Flint was termination of the lease.  That termination occurred as of December 31, 2012.  J.A. 134.

Dave & Buster's contention that a different portion of Section 18.1 gives it another chance to "cure" a non-monetary default by paying damages after Dave & Buster's previously elected not to cure the default by complying with its obligations under the contract and after White Flint has already exercised its termination remedy strains logic.  Under Dave & Buster's view, termination of the lease would have no consequence as Dave & Buster's could simply wait for White Flint to bring an action for possession and then offer to "cure" the default not by complying with the radius restriction but by offering to pay monetary damages subject to White Flint's ability to prove such damages.  Dave & Buster's tortured construction of the lease would essentially nullify the thirty day cure provision for a non-monetary default, give Dave & Buster's the right to continue to breach the radius restriction over the life of the lease, and would preclude White Flint from ever enforcing its right to terminate the lease for a non-monetary default even though that right was expressly provided in Section 18.1.  The district court rightly concluded that Dave & Buster's construction of the agreement was inconsistent with the intent of the contract when read in its entirety.  J.A.  373-388.

43

Dave & Buster's argument fails for the additional reason that there has been a final adjudication. The March 24, 2014 Order adjudicated the rights of the parties and determined that Dave & Buster's was in breach and that the termination was effective. The suggestion that the contract was intended to allow Dave & Buster's to be able to prolong its right to cure during an appeal of that ruling and then offer to pay money damages is an absurd interpretation.[10] As a matter of contract interpretation, an interpretation that results in an illogical and absurd result is disfavored. *Middlebrook Tech, LLC v. Moore*, 157 Md. App. 40, 66, 849 A.2d 63, 79 (2004) ("The court's interpretation should not permit an absurd or unreasonable result.").

If that were not enough, the language cited by Dave & Buster's requires that there be "a bona fide dispute." In the many years since White Flint first notified Dave & Buster's of the default, Dave & Buster's never once disputed that its operation of its Arundel Mills Mall facility under the Dave & Buster's trade name

---

[10] Dave & Buster's cites non-analogous cases suggesting that a final adjudication does not occur until all appeals have been exhausted. D&B Brief at 44. However, there has to be a final judgment to appeal in the first place, and Maryland and Federal courts have held that a trial court order is a final adjudication even when an appeal is pending. *Campbell v. Lake Hallowell Homeowners Ass'n,* 157 Md. App. 504, 525, 852 A.2d 1029 (2004) (the pendency of an appeal does not affect the finality of a judgment for *res judicata* purposes). *In re Day*, 409 B.R. 337, 342-43 (Bankr. D. Md. 2009) (same); *Warwick Corp. v. Md. Dep't of Transp.,* 573 F. Supp. 1011, 1014 (D.Md.1983) (finding that to preclude application of *res judicata* to a judgment pending appeal would be "laughable.").

was a violation of Section 11.3 of the lease.  There is not and never has been any bona-fide dispute relative to the default.

## VI.     THE DISTRICT COURT DID NOT ERR IN STATING THAT DAVE & BUSTER'S ABANDONED ANY DAMAGE CLAIMS.

For the reasons stated above, the Court need not reach the last issue in Dave & Buster's brief.  In the event the Court does reach this issue, White Flint responds as follows.

The complaint included a request for damages.  J.A. 20.  When the Court initially did not dismiss all of Count II, it considered the possibility that Dave & Buster's might seek damages in connection with its claim for breach of the lease in that count, even though the Court dismissed Dave & Buster's claim for breach of implied covenant of good faith.  At the July 21 hearing, Dave & Buster's counsel made clear that it was not seeking damages (pre-termination or post-termination) in Count II.  J.A. 390-392.  The district court, therefore, did not err in construing counsel's comments to reflect an abandonment of any request for damages.

45

46

## **CONCLUSION**

White Flint respectfully requests that the judgment be affirmed.


Date:  November 10, 2014          Respectfully submitted,

                                           BRAULT GRAHAM, LLC

                                         */s/ Albert D. Brault*_____
                                         Albert D. Brault, 01041


                                         */s/ James M. Brault*_____
                                         James M. Brault, 03943
                                         101 S. Washington Street
                                         Rockville, MD 20850
                                         Tel:  301-424-1060
                                         Fax:  301-424-7991
                                         adb@braultgraham.com
                                         jmbrault@braultgraham.com
                                         *Counsel for Appellee*



## **STATEMENT REGARDING ORAL ARGUMENT**

White Flint respectfully requests that the Court hear oral argument.

                                         */s/ Albert D. Brault*
                                         Albert D. Brault

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**
No. 14-1794 Caption: Dave & Buster's Inc. v. White Flint Mall, LLLP            .

**CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)**
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. Type-Volume Limitation: Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

   This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [X]     this brief contains  11.211 [state number of] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

   [ ]      this brief uses a monospaced typeface and contains_____[state number of] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. Typeface and Type Style Requirements: A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [X]     this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2013     [identify word processing program] in 14 Point Times New Roman font [identify font size and type style]; or

   [ ]      this brief has been prepared in a monospaced typeface using _____[identify word processing program] in _____[identify font size and type style].

Signature: /s/ James M. Brault            Date:  November 10, 2014
              Counsel for Appellee

48

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔔𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
## 𝔣𝔬𝔯 𝔱𝔥𝔢 𝔉𝔬𝔲𝔯𝔱𝔥 𝔔𝔦𝔯𝔠𝔲𝔦𝔱

*Dave & Buster's Inc., v White Flint Mall, LLLP*, No. 8:13-CV-3390

## <u>CERTIFICATE OF SERVICE</u>

I, Robyn Cocho, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by BRAULT & GRAHAM, LLC, Attorneys for Appellee to print this document.  I am an employee of Counsel Press.

On **November 10, 2014**, counsel has authorized me to electronically file the foregoing **Brief for Defendant-Appellee** with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> EDWARD S. SCHEIDEMAN
> PAUL D. SCHMITT
> DLA PIPER LLP (US)
> 500 8th Street, N.W.
> Washington, D.C.  20004
> Direct: (202 ) 799-4000
> Fax: (202 ) 799-5000
> edward.scheideman@dlapiper.com
> paul.schmitt@dlapiper.com
> *Counsel for Plaintiff–Appellant*

Additionally, two paper copy will be mailed to the above counsel on this date.

Unless otherwise noted, 8 paper copies have been filed with the Court on the same date via U.S. Express Mail.

November 10, 2014                                    /s/ Robyn Cocho
                                                     Counsel Press